# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**612**
**KA 10-01203**
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                             MEMORANDUM AND ORDER

RODNEY T. MOBLEY, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (KIMBERLY F. DUGUAY OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Joseph D. Valentino, J.), rendered January 12, 2010. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, those parts of the motion seeking to suppress tangible property and statements are granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). We agree with defendant that Supreme Court erred in denying his motion to suppress tangible property, i.e., a handgun, and his subsequent oral statements to the police because the police lacked reasonable suspicion to justify a search of his person.

On September 5, 2008, City of Rochester (City) police officers and New York State Troopers were patrolling allegedly high crime areas of the City. At approximately 7:30 p.m., a City police officer (the observing officer) was in an unmarked vehicle parked at the corner of North and Helena Streets. He observed defendant approximately 30 to 35 feet away, standing with a group of five or six men at the corner of North and Grace Streets, and he saw defendant use his right hand to "cup" a weighted object in his right pants pocket as he readjusted his clothing. The observing officer radioed another officer in a marked New York State police vehicle (the uniformed officer) that "a kid" on the corner "had made movements towards his right side," and requested that the uniformed officer "step out with" defendant. When the marked police vehicle approached defendant on North Street, defendant quickly turned away and walked down Grace Street. The observing officer then drove the unmarked vehicle past

defendant, and the observing officer's partner exited the vehicle, identified himself as a police officer and ordered defendant to stop and "show his hands." At that point, the marked vehicle approached on Grace Street and the uniformed officer observed an object in defendant's left hand. After the uniformed officer exited the marked vehicle, he observed defendant place the object into his left rear pants pocket. The uniformed officer seized defendant's hands, patted his left rear pants pocket, felt a hard object, reached into that pocket and removed a cell phone. He then patted defendant's right front pocket and felt the outline of a gun.

A police officer may stop a person to search for weapons where the officer "reasonably suspects that such person is committing, has committed or is about to commit" a crime (CPL 140.50 [1]), and the officer "reasonably suspects that he [or she] is in danger of physical injury" (CPL 140.50 [3]). "A stop based on reasonable suspicion will be upheld so long as the intruding officer can point to 'specific and articulable facts which, along with any logical deductions, reasonably prompted th[e] intrusion' " (*People v Brannon*, 16 NY3d 596, 602). In contrast, however, "actions that are 'at all times innocuous and readily susceptible of an innocent interpretation . . . may not generate a founded suspicion of criminality' " (*People v Riddick*, 70 AD3d 1421, 1422, *lv denied* 14 NY3d 844; *see People v De Bour*, 40 NY2d 210, 216). If the intruding officer lacks personal knowledge sufficient to establish reasonable suspicion, information that the intruding officer received "as a result of communication with" a fellow officer is presumed reliable (*People v Ketcham*, 93 NY2d 416, 419 [internal quotation marks omitted]; *see People v Ramirez-Portoreal*, 88 NY2d 99, 113). Nevertheless, a radio call from a fellow officer that defendant had made movements towards his right side "absent any indication of a weapon such as the visible outline of a gun or the audible click of the magazine of a weapon, does not establish the requisite reasonable suspicion that defendant had committed or was about to commit a crime" (*People v Ingram*, 114 AD3d 1290, 1293 [internal quotation marks omitted]; *see People v Cady*, 103 AD3d 1155, 1156; *Riddick*, 70 AD3d at 1422-1423). "The mere fact that defendant was located in an alleged high crime area does not supply that requisite reasonable suspicion, in the absence of 'other objective indicia of criminality' " (*Riddick*, 70 AD3d at 1423; *see People v Powell*, 246 AD2d 366, 369, *appeal dismissed* 92 NY2d 886). Moreover, flight from an approaching police vehicle does not provide the requisite reasonable suspicion absent "specific circumstances indicating that the suspect may be engaged in criminal activity" (*People v Sierra*, 83 NY2d 928, 929; *see Riddick*, 70 AD3d at 1422).

In addition, we note that there was no evidence that the officer "reasonably suspect[ed] that he [was] in danger of physical injury" (CPL 140.50 [3]; *see Powell*, 246 AD2d at 369-370). We conclude that defendant's act of emptying the contents of his left hand, i.e., a cell phone, into his pocket in responding to a police command to "show his hands" was an innocuous act (*see Powell*, 246 AD2d at 369). The intruding officer—here, the uniformed officer—did not observe, nor was he aware of, any threatening gestures or weapons (*see id.; cf. People v Sims*, 106 AD3d 1473, 1474, *appeal dismissed* 22 NY3d 992). Because the officer lacked reasonable suspicion that defendant was committing a crime and had no reasonable basis to suspect that he was in danger of physical injury, we further

conclude that the ensuing pat frisk of defendant was unlawful (*see* CPL 140.50 [1], [3]; *Riddick*, 70 AD3d at 1424; *Powell*, 246 AD2d at 369-370).

Inasmuch as the pat frisk was unlawful, "the handgun seized by the police should have been suppressed . . . , and the statements made by defendant to the police following the unlawful seizure also should have been suppressed as fruit of the poisonous tree" (*Riddick*, 70 AD3d at 1424). As a result, defendant's guilty plea must be vacated and, because our determination results in the suppression of all evidence of the charged crime, the indictment must be dismissed (*see id.; People v Stock*, 57 AD3d 1424, 1425). We therefore remit the matter to Supreme Court for proceedings pursuant to CPL 470.45.

Entered:  August 8, 2014                    Frances E. Cafarell
                                             Clerk of the Court