# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**74**

**KA 14-00793**

PRESENT: CARNI, J.P., LINDLEY, NEMOYER, TROUTMAN, AND SCUDDER, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                    V                           MEMORANDUM AND ORDER

JOHN R. SIMMONS, DEFENDANT-APPELLANT.

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (BARBARA J. DAVIES OF COUNSEL), FOR DEFENDANT-APPELLANT.

MICHAEL J. FLAHERTY, JR., ACTING DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.

-----------------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered June 18, 2013.  The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum:  On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress physical evidence, including a handgun, and statements made by defendant to the police following his arrest.  We reject that contention.

At the suppression hearing, the arresting officer testified that he had personal knowledge that the location of the arrest was a "very dangerous street" in a high-crime area known for gang activity and trafficking of crack cocaine.  The day before defendant's arrest, there had been a report of an assault as well as a "shots fired call" at that location, and the officer had made three recent arrests at that location for gun possession.

On the evening of defendant's arrest, the officer was patrolling the area in a marked police vehicle.  At approximately 10:00 p.m., the officer observed defendant and five other men in the middle of the street.  As the police vehicle approached them, three men disbanded from the group and began to walk away.  The officer exited the vehicle and defendant, who was wearing a T-shirt and shorts, walked past the officer while looking down and holding the center of his waistband underneath his T-shirt.  The officer, who had made over 150 gun arrests, and had "been involved in numerous gun arrests where

individuals holding the center of their waistband [were] wearing a belt [and had] a weapon," found this to be "[s]uspicious activity." He thus walked "slowly" toward defendant and asked him to show his hands.  As defendant complied by lifting his hands to the side, his shirt lifted and revealed "what appeared to be a buttstock or a handle of a weapon."  The officer immediately grabbed the weapon and placed defendant under arrest.

In *People v De Bour* (40 NY2d 210, 223), the Court of Appeals provided a "graduated four-level test for evaluating street encounters initiated by the police" (*People v Moore*, 6 NY3d 496, 498).  Here, there is no dispute that the officer's command to "show your hands," in a public setting, with gun holstered, and without any physical restraint on defendant's freedom of movement, did not constitute a seizure (*see generally People v Bora*, 83 NY2d 531, 534-536; *People v Hollman*, 79 NY2d 181, 184-185; *People v Hicks*, 68 NY2d 234, 240).  Rather, defendant contends that the officer lacked the requisite founded suspicion for a *De Bour* level two encounter.

Under *De Bour*, "level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot" (*Moore*, 6 NY3d at 498).  In determining whether the officer had the requisite "founded suspicion" for a level two encounter, the suppression court must consider the totality of circumstances (*see People v Mercado*, 120 AD3d 441, 442, *affd* 25 NY3d 936), and "must undertake a dual inquiry: 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place' " (*People v William II*, 98 NY2d 93, 98).

It is well settled that the "nature and location of the area where a suspect is detained may be one of the factors considered in determining whether, in a given case, the police acted reasonably" (*People v Bronston*, 68 NY2d 880, 881; *see People v Oden*, 36 NY2d 382, 385).  An officer's experience and training may also be considered a relevant factor in evaluating the weight to be given his or her observations (*see People v McRay*, 51 NY2d 594, 601; *People v Sylvain*, 33 AD3d 330, 331, *lv denied* 7 NY3d 904).

Here, we conclude that the location of this encounter in a high-crime area, the officer's training and his experience in investigating weapons possession crimes at this location, together with defendant's grabbing of his waistband with his hand concealed under his shirt, provided the requisite founded suspicion for the officer to command defendant to show his hands.  Under the totality of the circumstances, we conclude that it is of no consequence that the officer did not observe a gun before commanding defendant to show his hands.  Indeed, defendant's hand was concealed under his shirt while simultaneously grabbing his waistband.  The Court of Appeals has noted that "a handgun is often carried in the waistband" (*People v Benjamin*, 51 NY2d 267, 271; *see De Bour*, 40 NY2d at 221), and that it would be "absurd

to suggest that a police officer has to await the glint of steel before he can act to preserve his safety" (*Benjamin*, 51 NY2d at 271).

We recognize that a founded suspicion may not rest upon innocuous behavior that is susceptible of an innocent as well as a culpable interpretation (*see generally People v Brannon*, 16 NY3d 596, 602). Viewed in isolation by an untrained observer, defendant's actions might not appear to be suspicious but, "when viewed collectively and in the light of the officer's expertise," we conclude that the officer had a founded suspicion of criminal activity warranting a level two inquiry (*People v Wilson*, 52 AD3d 239, 240, *lv denied* 11 NY3d 743; *see generally People v Pines*, 281 AD2d 311, 311-312, *affd* 99 NY2d 525; *De Bour*, 40 NY2d at 220-221; *People v Hernandez*, 3 AD3d 325, 325, *lv denied* 2 NY3d 741).

All concur except LINDLEY, J., who dissents and votes to reverse in accordance with the following memorandum:  I respectfully dissent. While I agree with the majority that the officer's request to have defendant show his hands was a level two encounter under *People v De Bour* (40 NY2d 210, 223), thus requiring the officer to have "a founded suspicion that criminal activity is afoot" (*People v Moore*, 6 NY3d 496, 498; *see Matter of Shakir J.*, 119 AD3d 792, 794, *lv denied* 24 NY3d 916; *People v Fernandez*, 87 AD3d 474, 475), I disagree with the majority that the officer in this case had such a founded suspicion.  Therefore, I would reverse the judgment, vacate defendant's plea, grant those parts of his omnibus motion seeking to suppress tangible property and statements, dismiss the indictment, and remit the matter to Supreme Court for proceedings pursuant to CPL 470.45.

As the majority points out, the nature and location of the area as well as the officer's experience and training may be considered in determining whether the officer acted reasonably (*see People v Bronston*, 68 NY2d 880, 881; *People v McRay*, 51 NY2d 594, 601). Nevertheless, "[t]he fact that defendant was located in a high[-]crime area does not by itself justify the police conduct where . . . there were no other objective indicia of criminality" (*People v Stevenson*, 273 AD2d 826, 827; *see People v Ingram*, 114 AD3d 1290, 1293, *appeal dismissed* 24 NY3d 1201), because "innocuous behavior alone will not generate a founded . . . suspicion that a crime is at hand" (*De Bour*, 40 NY2d at 216; *see People v Mobley*, 120 AD3d 916, 918).

This case puts before us one very simple question, to wit, does grabbing one's waistband alone, without any other evidence that there is an object in that waistband, constitute innocuous behavior or evidence of criminality?  I answer that question in the negative. Although "[i]t is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband" (*People v Benjamin*, 51 NY2d 267, 271), the cases in which evidence of criminality has been found involve situations where the officers testified that the defendants were grabbing or cupping an object in the waistband (*see e.g. People v Pines*, 281 AD2d 311, 311-312, *affd* 99 NY2d 525; *People v Corona*, 142

AD3d 889, 889, *lv denied* 28 NY3d 1144; *People v Feliz*, 45 AD3d 437, 437, *lv denied* 9 NY3d 1033), or situations where the officers testified that they personally observed an actual bulge in the waistband (*see e.g. De Bour*, 40 NY2d at 221; *People v Gerard*, 94 AD3d 592, 592-593; *People v Crisler*, 81 AD3d 1308, 1309, *lv denied* 17 NY3d 793; *People v Stevenson*, 7 AD3d 820, 820-821).  Here, there was no such testimony (*cf. People v Robbins*, 83 NY2d 928, 930).

Inasmuch as the Court of Appeals has held that grabbing one's waistband, without more, "provide[s] . . . no information regarding criminal activity" (*id.*), I conclude that the officer did not have the requisite founded suspicion of criminality necessary to order defendant to show his hands.  Moreover, there was no testimony from the sole officer to testify at the suppression hearing that he had any fear for his safety.

I thus conclude that " 'the handgun seized by the police should have been suppressed . . . , and the statements made by defendant to the police following the unlawful seizure should have been suppressed as fruit of the poisonous tree' " (*Mobley*, 120 AD3d at 919).

Entered:  April 28, 2017                    Frances E. Cafarell
                                            Clerk of the Court