Lindley and Troutman, JJ.
(dissenting). We respectfully dissent. While we agree with the majority that the officer’s request to have defendant show his hands was a level two encounter under People v De Bour (40 NY2d 210, 223 [1976]), thus requiring the officer to have “a founded suspicion that criminal activity is afoot” (People v Moore, 6 NY3d 496, 498 [2006]; see Matter of Shakir J., 119 AD3d 792, 794 [2014], lv denied 24 NY3d 916 [2015]; People v Fernandez, 87 AD3d 474, 475 [2011]), we disagree with the majority that the officer in this case had such a founded suspicion. Therefore, we would reverse the judgment, vacate defendant’s plea, grant those parts of his omnibus motion seeking to suppress tangible property and statements, dismiss the indictment, and remit the matter to Supreme Court for proceedings pursuant to CPL 470.45.
As the majority points out, the nature and location of the area as well as the officer’s experience and training may be considered in determining whether the officer acted reasonably (see People v Bronston, 68 NY2d 880, 881 [1986]; People v McRay, 51 NY2d 594, 601 [1980]). Nevertheless, “[t]he fact that defendant was located in a high[-]crime area does not by itself justify the police conduct where . . . there were no other objective indicia of criminality” (People v Stevenson, 273 AD2d 826, 827 [2000]; see People v Ingram, 114 AD3d 1290, 1293 [2014], appeal dismissed 24 NY3d 1201 [2015]), because “innocuous behavior alone will not generate a founded . . . suspicion that a crime is at hand” (De Bour, 40 NY2d at 216; see People v Mobley, 120 AD3d 916, 918 [2014]).
This case puts before us one very simple question, to wit, does grabbing one’s waistband alone, without any other evidence that there is an object in that waistband, constitute innocuous behavior or evidence of criminality? We answer that question in the negative. Although “[i]t is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband” (People v Benjamin, 51 NY2d 267, 271 [1980]), the cases in which evidence of criminality has been found involve situations where the officers testified that the defendants were grabbing or cupping an object in the waistband (see e.g. People v Pines, 281 AD2d 311, 311-312 [2001], affd 99 NY2d 525 [2002]; People v Corona, 142 AD3d 889, 889 [2016], lv denied 28 NY3d 1144 [2017]; People v Feliz, 45 AD3d 437, 437 [2007], lv denied 9 NY3d 1033 [2008]), or situations where the officers testified that they personally observed an actual *1468 bulge in the waistband (see e.g. De Bour, 40 NY2d at 221; People v Gerard, 94 AD3d 592, 592-593 [2012]; People v Crisler, 81 AD3d 1308, 1309 [2011], lv denied 17 NY3d 793 [2011]; People v Stevenson, 7 AD3d 820, 820-821 [2004]). Here, there was no such testimony (cf. People v Robbins, 83 NY2d 928, 930 [1994]).
Inasmuch as the Court of Appeals has held that grabbing one’s waistband, without more, “provide [s] ... no information regarding criminal activity” (id.), we conclude that the officer did not have the requisite founded suspicion of criminality necessary to order defendant to show his hands. Moreover, there was no testimony from the sole officer to testify at the suppression hearing that he had any fear for his safety.
We thus conclude that “ The handgun seized by the police should have been suppressed . . . , and the statements made by defendant to the police following the unlawful seizure also should have been suppressed as fruit of the poisonous tree’ ” (Mobley, 120 AD3d at 919).
Present — Carni, J.P., Lindley, NeMoyer, Troutman and Scudder, JJ.