People v Patterson (2019 NY Slip Op 04825)





People v Patterson


2019 NY Slip Op 04825


Decided on June 14, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 14, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


271 KA 15-00064

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RUDY C. PATTERSON, DEFENDANT-APPELLANT. 






BRIDGET L. FIELD, ROCHESTER, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered October 20, 2014. The judgment convicted defendant, upon a jury verdict, of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. 
It is hereby ORDERED that the judgment so appealed from is modified on the law by reversing that part convicting defendant of criminal possession of a controlled substance in the fifth degree and as modified the judgment is affirmed, and a new trial is granted on that count of the indictment.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal possession of a controlled substance (CPCS) in the third degree (Penal Law § 220.16 [1]) and CPCS in the fifth degree (§ 220.06 [5]). In June 2013, a plainclothes police officer observed a sedan make a right turn without a proper turn signal and relayed that information by radio to a uniformed police officer. The uniformed officer stopped the sedan and approached its driver, defendant. At that point, the uniformed officer detected an odor of alcohol and marihuana and observed that defendant had watery, bloodshot eyes. Defendant was thereafter frisked, and the officers recovered from his person a large rock of crack cocaine, several dime bags containing smaller amounts of crack cocaine, and $349 cash.
Contrary to defendant's contention, County Court (Piampiano, J.) properly refused to suppress physical evidence and statements. A police stop of a vehicle is permissible where a police officer has probable cause to believe that the driver of the vehicle has committed a traffic violation (see People v Robinson, 97 NY2d 341, 349 [2001]; People v Robinson, 122 AD3d 1282, 1283 [4th Dept 2014]). An officer who lacks personal knowledge sufficient to establish probable cause may rely on information communicated by a fellow officer, " provided that the police as a whole were in possession of information sufficient to constitute probable cause' " (People v Ramirez-Portoreal, 88 NY2d 99, 113 [1996]; see also People v Mobley, 120 AD3d 916, 918 [4th Dept 2014]). At the suppression hearing, the uniformed officer testified that he received a radio communication from the plainclothes officer, who observed a sedan use an improper turn signal (see Vehicle and Traffic Law § 1163), and also received radio communications advising as to the sedan's location and direction of travel. Immediately after the uniformed officer received those communications, he spotted a sedan in that location and traveling in that direction. An audio recording of those communications was received in evidence and is consistent with the uniformed officer's testimony in that regard. The uniformed officer thus was justified in stopping the sedan because he had probable cause to believe that its driver had committed a traffic violation (see People v Robinson, 134 AD3d 1538, 1539 [4th Dept 2015]).
Defendant further contends that Supreme Court (Moran, J.), to which the matter was transferred prior to trial, abused its discretion in reassigning a certain attorney to serve as his [*2]defense counsel because the court had previously relieved that same attorney due to an apparent conflict of interest. We reject that contention. Inasmuch as the record establishes that the conflict had been resolved prior to the reassignment of defense counsel, we conclude that defendant failed to establish the existence of a genuine conflict between himself and counsel (see People v Correa, 145 AD3d 1640, 1641 [4th Dept 2016]; see generally People v Sides, 75 NY2d 822, 824 [1990]).
Defendant next contends that the court erred in denying his challenge for cause to a prospective juror. We reject that contention as well. Whenever a statement made by a prospective juror casts "serious doubt" on his or her ability to render an impartial verdict, the court must excuse that prospective juror for cause unless he or she provides an "unequivocal assurance" that he or she can set aside any bias and render an impartial verdict based on the evidence (People v Warrington, 28 NY3d 1116, 1119-1120 [2016] [internal quotation marks omitted]; see People v Garcia, 148 AD3d 1559, 1559-1560 [4th Dept 2017], lv denied 30 NY3d 980 [2017]).
Here, during voir dire, defense counsel asked a panel of prospective jurors: "Does anybody here need to hear the defendant testify?" One of the prospective jurors (juror) gave an affirmative response. Defense counsel asked the juror a follow-up question: "Is that important to you that he testify or you would think maybe he's hiding something?" In response, the juror gave a response indicating that she would reach a verdict based upon the facts presented and the elements of the crime. Defense counsel then asked whether the juror would hold defendant's silence against him; the juror stated that she did not believe that she would. Defense counsel then repeated her initial question, i.e., whether the juror would need to hear defendant testify. The juror answered: "I would feel like I had more information if I heard from him than if I did not." Upon further questioning, the juror indicated that she would not need to hear defendant's testimony in order to reach a decision on a verdict. The juror added: "I wouldn't necessarily think he was hiding something." In summary, although the juror initially indicated that she would "need" to hear defendant's testimony, when defense counsel asked her further clarifying questions, the juror's statements indicated that she would not be influenced by defendant's silence and that she would be able to decide the case based upon the law and the facts. We thus conclude that the juror's statements did not "raise a serious doubt regarding the ability to be impartial" (Warrington, 28 NY3d at 1119 [internal quotation marks omitted]; cf. People v Hargis, 151 AD3d 1946, 1947 [4th Dept 2017]).
We reject defendant's further contention that the court abused its discretion in allowing police testimony at trial with respect to the element of intent to sell. The officer testified that, in six years on the department's tactical unit, he had participated in thousands of drug arrests, including the arrest of defendant, and, in his experience, crack users typically carry a limited amount of crack. Although the officer had encountered crack users with a rock of crack, he had never encountered a crack user carrying a rock, several dime bags, and a large amount of cash. The court properly allowed the officer's testimony because it was limited to matters related to drug transactions that were not within the common knowledge or experience of the average juror, and thus the testimony did not invade the jury's fact-finding function (see People v Hicks, 2 NY3d 750, 751 [2004]; cf. People v Hartzog, 15 AD3d 866, 866-867 [4th Dept 2005], lv denied 4 NY3d 831 [2005]).
We also reject defendant's challenge to the legal sufficiency of the evidence. Viewing the evidence in the light most favorable to the People, we conclude that there is a "valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial" (People v Williams, 84 NY2d 925, 926 [1994]; see People v Danielson, 9 NY3d 342, 349 [2007]), and thus that the evidence is legally sufficient with respect to both counts (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Furthermore, viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), we reject defendant's contention that the verdict is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Defendant failed to preserve his contention that the prosecutor, in describing the testimony of the police witnesses as "untouchable," improperly vouched for their credibility because defendant did not object to the remark on that ground (see generally People v Simmons, 133 AD3d 1227, 1228 [4th Dept 2015]). Although defendant preserved his contention that the [*3]prosecutor's remark improperly shifted the burden of proof, we nevertheless conclude that the remark was isolated and did not deprive defendant of a fair trial (see People v Walker, 117 AD3d 1441, 1442 [4th Dept 2014], lv denied 23 NY3d 1044 [2014]). We further conclude that all of the remaining challenged remarks were fair comment on the evidence (see People v Easley, 124 AD3d 1284, 1285 [4th Dept 2015], lv denied 25 NY3d 1200 [2015]).
We agree with defendant, however, that the court erred in refusing to submit CPCS in the seventh degree (Penal Law § 220.03) to the jury as a lesser included offense of CPCS in the fifth degree. A party who seeks to have a lesser included offense submitted to the jury must satisfy a two-pronged test: "First, the crime must be a lesser included offense within the meaning of Criminal Procedure Law
§ 1.20 (37) . . . Second, the party making the request for a charge-down must then show that there is a reasonable view of the evidence in the particular case that would support a finding that [the defendant] committed the lesser included offense but not the greater' " (People v Rivera, 23 NY3d 112, 120 [2014]). Both prongs are satisfied here. CPCS in the seventh degree is a lesser included offense of CPCS in the fifth degree under Penal Law § 220.06 (5) (cf. People v Scott, 120 AD3d 1573, 1573-1574 [4th Dept 2014], lv denied 24 NY3d 1088 [2014]; People v Demus, 82 AD3d 1667, 1668 [4th Dept 2011], lv denied 17 NY3d 815 [2011]). Furthermore, there is a reasonable view of the evidence that defendant committed the lesser offense but not the greater (cf. Scott, 120 AD3d at 1574; see generally Rivera, 23 NY3d at 120). A person is guilty of CPCS in the fifth degree when he or she knowingly and unlawfully possesses cocaine weighing 500 milligrams or more (see § 220.06 [5]), whereas a person is guilty of CPCS in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance (see § 220.03). In his trial testimony, defendant denied possessing the crack rock, but admitted to possessing the dime bags. A forensic chemist testified that the weight of the crack rock was greater than the aggregate weight of the pure cocaine in the rock and the dime bags combined. If the jury credited defendant's testimony with respect to the rock, it reasonably could have found that defendant possessed some amount of cocaine, but that the People failed to establish that he possessed cocaine weighing 500 milligrams or more. We therefore modify the judgment by reversing that part convicting defendant of CPCS in the fifth degree, and we grant defendant a new trial on that count.
Defendant's remaining contentions do not require reversal or further modification of the judgment. In particular, we conclude that the record establishes that defendant "was given a reasonable opportunity to appear before the Grand Jury but declined to take advantage of it" (People v Sumpter, 178 AD2d 973, 974 [4th Dept 1991], lv denied 80 NY2d 896 [1992]) and that the court properly refused to declare a mistrial as a sanction for the People's loss of the cash recovered from his person (see generally People v Kelly, 62 NY2d 516, 520-521 [1984]). Finally, the sentence with respect to the first count of the indictment is not unduly harsh or severe.
All concur except Lindley, J., who dissents and votes to reverse in accordance with the following memorandum: I agree with all of the majority's conclusions save one. Unlike the majority, I conclude that Supreme Court erred in denying defendant's challenge for cause to a prospective juror who expressed a bias during voir dire. I therefore respectfully dissent and would reverse the judgment and grant a new trial.
The relevant law is well settled. "[A] prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the juror states unequivocally on the record that he or she can be fair and impartial" (People v Chambers, 97 NY2d 417, 419 [2002]; see People v Arnold, 96 NY2d 358, 362 [2001]). "By contrast, where prospective jurors unambiguously state that, despite preexisting opinions that might indicate bias, they will decide the case impartially and based on the evidence, the trial court has discretion to deny the challenge for cause if it determines that the juror's promise to be impartial is credible" (Arnold, 96 NY2d at 363).
Here, at the outset of voir dire, the court provided preliminary legal instructions to the prospective jurors. The court properly instructed the prospective jurors, among other things, that "defendants are not obligated to take the witness stand, call witnesses or explain their actions in any way." The court also stated that the jurors selected to hear the case could not draw "any inference unfavorable to the defendant" should he not testify or present evidence.
During the first round of questioning, defense counsel asked the panel of prospective jurors whether anyone needed to hear defendant testify. Prospective juror number three (juror) answered "Yes." There can be no dispute that the juror's answer "suggested that defendant had an obligation to testify, thereby casting serious doubt on her ability to render an impartial verdict" (People v Hargis, 151 AD3d 1946, 1947 [4th Dept 2017]; see People v Bludson, 97 NY2d 644, 645-646 [2001]; People v Casillas, 134 AD3d 1394, 1396 [4th Dept 2015]).
The question thus becomes whether the juror thereafter unequivocally stated that, despite needing to hear from defendant, she could follow the court's instructions and decide the case impartially and based solely on the evidence. The answer to that question is clearly no, and the majority does not contend otherwise. Instead, the majority appears to conclude that subsequent statements made by the juror alleviated any concern about her ability to render an impartial verdict. I cannot agree. Nothing said by the juror after her initial statement provided an unequivocal assurance that her "need" to hear from defendant would not influence her verdict.
The fact that the juror subsequently stated that she could assess the elements of the crime and render a decision without defendant's testimony does not establish that she would be uninfluenced by defendant's failure to testify. And the fact that the juror stated that she "believed" that she would not hold defendant's failure to testify against him did not, in my view, provide the requisite unequivocal assurance of impartiality. "[T]he very point of the unequivocal assurance of impartiality is to allow[] a juror to purge a previous opinion . . . by expressly declaring that he [or she] will not be influenced by that prior opinion" (People v Warrington, 28 NY3d 1116, 1120 [2016] [internal quotation marks omitted and emphasis added]). Here, there was no unequivocal or express declaration by this juror that she would not be influenced by defendant's failure to testify.
Moreover, the juror's statement about needing to hear from defendant "called for a prompt instruction on the relevant principles regarding the burden of proof and a defendant's right not to testify or present evidence, along with the elicitation of unequivocal assurances that the panelists would follow that charge" (People v Jackson, 125 AD3d 485, 486 [1st Dept 2015]). The court did not provide such an instruction to the jury.
As the Court of Appeals has advised, " the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve' " (People v Blyden, 55 NY2d 73, 78 [1982]; see People v Webster, 177 AD2d 1026, 1027 [4th Dept 1991], lv denied 79 NY2d 866 [1992]). "Even if, through such caution, the court errs and removes an impartial juror, the worst the court will have done . . . is to have replaced one impartial juror with another impartial juror' " (Blyden, 55 NY2d at 78). The cautious approach recommended by the Court of Appeals was not followed in this case. I therefore conclude that the court erred in denying defendant's challenge for cause.
Entered: June 14, 2019
Mark W. Bennett
Clerk of the Court