■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALCOLM T. RIDDICK, Appellant. [894 NYS2d 260]—

Appeal from a judgment of the Monroe County Court (Richard A. Keenan, J.), rendered August 17, 2006. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree (two counts).

It is hereby ordered that the judgment so appealed from is reversed on the law, the plea is vacated, those parts of the motion seeking to suppress tangible property and statements are granted, the indictment is dismissed, and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 470.45.

Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [former (2)]) and two counts of criminal possession of a weapon in the third degree (§ 265.02 [3], [former (4)]), defendant contends that County Court erred in refusing to suppress the handgun that he discarded while being pursued by the police and his subsequent statements to the police because the police lacked reasonable suspicion to justify the pursuit. We agree.

At the suppression hearing, the People presented evidence that, on December 22, 2005, City of Rochester (City) police officers and federal law enforcement agents were patrolling various areas of the City known for gang activity as part of a law and order detail in an attempt to reduce gun violence and crime. The officers were traveling in an unmarked cargo van, which was followed by an unmarked SUV, but they were each wearing

a vest with police markings on the front and back. Shortly after midnight, the officers observed defendant and two other men standing on a street corner in an area that, according to the police, was known for recent armed robberies and violent gang activity. The driver of the van pulled up just past the three individuals, rolled down his window, and told them to leave the area. According to one of the passengers in the van, defendant reached for his waistband and walked away from his companions. At some point thereafter, defendant began to run. The police pursued defendant on foot and discovered a discarded handgun during their subsequent search of·the path taken by defendant.

As an initial matter, we conclude that the police had an objective credible reason to approach the three men on the street corner and to request information in light of the late hour, the cold weather, the absence of other pedestrian or automobile traffic, and the presence of the men in a high crime area (*see generally People v McCoy*, 46 AD3d 1348 [2007], *lv denied* 10 NY3d 813 [2008]). Thus, we conclude that the police encounter was lawful at its inception (*see People v De Bour*, 40 NY2d 210, 220 [1976]).

With respect to the subsequent pursuit, it is well settled that "the police may pursue a fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime" (*People v Martinez*, 80 NY2d 444, 446 [1992]). Flight alone "is insufficient to justify pursuit because an individual has a right 'to be let alone' and refuse to respond to police inquiry" (*People v Holmes*, 81 NY2d 1056, 1058 [1993]; *see People v Ross*, 251 AD2d 1020, 1021 [1998], *lv denied* 92 NY2d 882 [1998]). However, " 'a defendant's flight in response to an approach by the police, *combined with other specific circumstances indicating that the suspect may be engaged in criminal activity*, may give rise to reasonable suspicion, the necessary predicate for police pursuit' " (*People v Martinez*, 59 AD3d 1071, 1072 [2009], *lv denied* 12 NY3d 856 [2009] [emphasis added], quoting *People v Sierra*, 83 NY2d 928, 929 [1994]; *see People v Davis*, 48 AD3d 1120, 1121-1122 [2008], *lv denied* 10 NY3d 957 [2008]).

It is further well settled that actions that are "at all times innocuous and readily susceptible of an innocent interpretation . . . may not generate a founded suspicion of criminality" (*People v Powell*, 246 AD2d 366, 369 [1998], *appeal dismissed* 92 NY2d 886 [1998]; *see De Bour*, 40 NY2d at 216). Here, the fact that defendant reached for his waistband, absent any indication of a weapon such as the visible outline of a gun or the

audible click of the magazine of a weapon, does not establish the requisite reasonable suspicion that defendant had committed or was about to commit a crime (*see Sierra*, 83 NY2d at 930; *Powell*, 246 AD2d at 369; *People v Howard*, 147 AD2d 177, 178-181 [1989], *appeal dismissed* 74 NY2d 943 [1989]; *cf. People v Forbes*, 283 AD2d 92, 93-94 [2001], *lv denied* 97 NY2d 681 [2001]). The mere fact that defendant was located in an alleged high crime area does not supply that requisite reasonable suspicion, in the absence of "other objective indicia of criminality" (*Powell*, 246 AD2d at 370; *see People v Cornelius*, 113 AD2d 666, 670 [1986]), and no such evidence was presented at the suppression hearing. Thus, although the police had a valid basis for the initial encounter, we conclude that "there was nothing that made permissible any greater level of intrusion" (*People v Howard*, 50 NY2d 583, 590 [1980], *cert denied* 449 US 1023 [1980]).

We further agree with defendant that the evidence presented at the suppression hearing was insufficient to establish that defendant knew that the individuals who approached him in the unmarked vehicles were police officers. We note at the outset that, contrary to the dissent, we conclude that defendant preserved his contention for our review. Defendant moved, inter alia, to suppress tangible property and his statements to the police on the ground that he was subjected to an unlawful stop and arrest, and thus his contention with respect to the legality of the police conduct is preserved for our review (*see People v De Bour*, 40 NY2d 210, 214 [1976]). "The mere emphasis of one prong of attack over another or a shift in theory on appeal[ ] will not constitute a failure to preserve" (*id.* at 215). Furthermore, although the dissent concludes that the record is not sufficiently developed to enable us to review the merits of defendant's contention on appeal, we note that at a suppression hearing the People have the initial burden of establishing the legality of the police conduct (*see People v Wise*, 46 NY2d 321, 329 [1978]; *People v Baldwin*, 25 NY2d 66, 70-71 [1969]).

Turning to the merits of defendant's contention, we conclude that, although the officers were wearing vests with police markings, no evidence was presented to establish that the markings were visible when the driver of the van pulled up just past the three individuals and rolled down his window. Indeed, according to the evidence presented, it was dark outside and the driver of the van was seated therein when he addressed the individuals. Notably, the driver of the van, who was in the best position to testify concerning the visibility of the police markings on his clothing and whether defendant appeared to recognize him as a

police officer, did not testify at the suppression hearing. The testimony of a passenger in the van that the individuals "learned we were the police" when the driver rolled down his window is mere speculation and thus is insufficient to establish that the driver was indentifiable as a police officer at that time. In the absence of any evidence indicating that the police officers were clearly identifiable as such (*cf. Martinez*, 80 NY2d at 446; *People v Brewer*, 28 AD3d 265 [2006], *lv denied* 7 NY3d 753 [2006]; *People v Hernandez*, 3 AD3d 325 [2004], *lv denied* 2 NY3d 741 [2004]), or that defendant recognized the officers as such (*cf. People v Pines*, 281 AD2d 311, 311-312 [2001], *affd* 99 NY2d 525 [2002]; *People v Byrd*, 304 AD2d 490 [2003], *lv denied* 100 NY2d 579 [2003]; *People v Brown*, 277 AD2d 107, 108 [2000], *lv denied* 96 NY2d 756 [2001]), it cannot be said that the officers were justified in pursuing defendant based on his alleged "flight" from the police (*cf. Martinez*, 59 AD3d at 1072).

Inasmuch as the police officers' pursuit of defendant was unlawful, the handgun seized by the police should have been suppressed (*see People v Brogdon*, 8 AD3d 290, 292 [2004]), and the statements made by defendant to the police following the unlawful seizure also should have been suppressed as fruit of the poisonous tree (*see People v Christianson*, 57 AD3d 1385, 1388 [2008]). In light of our conclusion that the court should have granted those parts of defendant's omnibus motion seeking to suppress tangible property obtained as a result of the illegal pursuit and defendant's subsequent statements to the police, defendant's guilty plea must be vacated (*see People v Stock*, 57 AD3d 1424 [2008]). Further, because our conclusion results in the suppression of all evidence in support of the crimes charged, the indictment must be dismissed (*see id.*). We therefore remit the matter to County Court for proceedings pursuant to CPL 470.45.

All concur except Centra, J.P., and Fahey, J., who dissent and vote to affirm in the following memorandum.

Centra, J.P., and Fahey, J. (dissenting). We respectfully dissent and would affirm the judgment. Initially, we conclude that defendant failed to preserve for our review his contention that the police did not have a legal basis to pursue him because he did not flee from individuals whom he knew to be police officers (*see* CPL 470.05 [2]). Defendant moved, inter alia, to suppress the handgun and his statements to the police "on the ground that such . . . evidence and statements are the unattenuated result of an unlawful arrest or seizure of the defendant's person." In his affirmation in support of the motion, defense counsel did not allege that defendant was unaware that he was

fleeing from the police. Further, there is no indication based on defendant's cross-examination of the police officers at the suppression hearing that defendant was contending that he was unaware that the individuals in the van that approached him were police officers. In addition, at the close of the suppression hearing, defendant submitted a memorandum of law in support of his motion but did not contend therein that there was insufficient evidence to demonstrate that he knew that he was fleeing from police officers. Based on the above, it cannot be said that defendant preserved his present contention for our review (*see People v Turriago*, 90 NY2d 77, 83-84 [1997], *rearg denied* 90 NY2d 936 [1997]; *People v Carter*, 86 NY2d 721, 722 [1995], *rearg denied* 86 NY2d 839 [1995]; *People v Martin*, 50 NY2d 1029, 1030-1031 [1980]; *see also People v Johnson*, 83 NY2d 831, 834 [1994]). The Court of Appeals' decision in *People v De Bour* (40 NY2d 210 [1976]) does not compel a different result. Although in that case the Court held that "[t]he mere emphasis of one prong of attack over another or a shift in theory on appeal, will not constitute a failure to preserve" (*id.* at 215), there was sufficient evidence in *De Bour* to permit the Court to address the merits of the defendant's contention on appeal (*see id.* at 214-215). Here, however, the record is not sufficiently developed to enable us to review the merits of defendant's contention on appeal (*see People v Jones*, 81 AD2d 22, 38-39 [1981]).

Nevertheless, inasmuch as the majority has reviewed the merits of defendant's contention, we do so as well, to the extent that the record allows. We cannot agree with the majority that County Court erred in denying those parts of defendant's omnibus motion seeking to suppress tangible property and defendant's statements to the police. The record establishes that, shortly after midnight in late December 2005 police officers traveling in an unmarked van approached defendant and two other men who were standing on a street corner in an area known for recent armed robberies and violent gang activity. The temperature outside at the time was 15 degrees, and the officers were each dressed in a "battle dress uniform," which consisted of an ammunition belt, handcuffs, flashlights and, most importantly, a dark vest with markings in large yellow letters on the front and back stating, "Police, ATF Agent." There was no other pedestrian or automobile traffic, and the officer who was driving the van stopped that vehicle near the street corner in question and rolled down his window to speak to the group. According to the officer who was seated behind the driver, the officer driving the van was visible to defendant at that time. The officer driving the van spoke with the group for ap-

proximately five seconds before defendant reached for his waistband and began to walk away. At that point, an officer seated on the passenger's side of the van yelled to alert the other officers, including those following the van in an unmarked SUV, that defendant was reaching for his waistband. The officers pursued defendant on foot and eventually apprehended him. One of the officers subsequently retraced the path of defendant by following his footprints in the snow and recovered a handgun in an alley.

"It is well settled that 'a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit' " (*People v Martinez*, 59 AD3d 1071, 1072 [2009], *lv denied* 12 NY3d 856 [2009], quoting *People v Sierra*, 83 NY2d 928, 929 [1994]). First, contrary to the majority's conclusion, the record establishes that defendant knew that the men in the van were police officers and that he fled in response to their approach. The police officers testified at the suppression hearing that they were wearing vests identifying themselves as such when they approached defendant in the unmarked van. We conclude that the reasonable inferences to be drawn from their testimony support the conclusion that defendant was aware that they were police officers (*see People v Randolph*, 278 AD2d 52 [2000], *lv denied* 96 NY2d 762 [2001]).

Second, we disagree with the majority that the police were not justified in pursuing defendant. In determining whether reasonable suspicion exists, " 'the emphasis should not be narrowly focused on . . . any . . . single factor, but on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer' " (*People v Stephens*, 47 AD3d 586, 589 [2008], *lv denied* 10 NY3d 940 [2008]). Here, defendant was standing outside late at night in the cold, in an area known for significant criminal activity, and he reached for his waistband before fleeing. Based on those circumstances, and particularly in light of the fact that "[i]t is quite apparent to an experienced police officer . . . that a handgun is often carried in the waistband" (*People v Benjamin*, 51 NY2d 267, 271 [1980]; *see People v Zeigler*, 61 AD3d 1398 [2009]), we cannot agree with the majority that the court erred in refusing to suppress the handgun and defendant's statements to the police (*see People v Pines*, 99 NY2d 525, 526-527 [2002]). Present—Centra, J.P., Fahey, Peradotto, Carni and Gorski, JJ.