# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**324**

**KA 12-01247**

PRESENT: SCUDDER, P.J., FAHEY, SCONIERS, VALENTINO, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,

V                                          MEMORANDUM AND ORDER

QUENTIN A. SIMS, DEFENDANT-RESPONDENT.

---

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR APPELLANT.

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ROBERT L. KEMP OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---

Appeal from an order of the Erie County Court (Michael F. Pietruszka, J.), dated June 5, 2012. The order granted those parts of the omnibus motion of defendant seeking to suppress certain physical evidence and oral statements.

It is hereby ORDERED that the order so appealed from is reversed on the law, those parts of the omnibus motion seeking to suppress statements and physical evidence are denied, and the matter is remitted to Erie County Court for further proceedings on the indictment.

Memorandum: The People appeal from an order that granted those parts of defendant's omnibus motion seeking to suppress physical evidence, i.e., a handgun, and defendant's oral statements to the police. We agree with the People that County Court erred in granting those parts of defendant's motion. The arresting officer did not violate defendant's rights when he approached him and asked for identification. According to the testimony presented by the People at the suppression hearing, the arresting officer and his partner were driving down the street in their marked patrol vehicle when defendant emerged from an alleyway riding a bicycle. The arresting officer testified that defendant continued to stare at him as defendant rode alongside the patrol vehicle for about 10 to 15 feet. Defendant was staring at the arresting officer when he "rode the bicycle into a porch" of a residence and "fell." Defendant then "ran up on the porch." At that point, the arresting officer was justified in asking defendant if he lived at the residence and, when defendant replied that he did not, in asking defendant for identification. Indeed, "[t]he testimony at the suppression hearing establishes that the police officer[] had an objective, credible reason for initially approaching defendant and requesting information about him" (*People v Hill*, 302 AD2d 958, 959, *lv denied* 100 NY2d 539; *see People v Bracy*,

91 AD3d 1296, 1297; *see generally People v Hollman*, 79 NY2d 181, 190-192).

We further conclude that the evidence presented at the suppression hearing establishes that the arresting officer had reasonable suspicion to believe that defendant posed a threat to his safety at the time he grabbed defendant's hand. According to the officer's testimony, defendant placed his hand in his pocket at least three times in spite of the arresting officer's requests that he not do so. Moreover, defendant placed his hand in his pocket even though he had previously told the arresting officer that he did not have any identification. According to the testimony of the arresting officer's partner, the officers were located in an area that was the "most violent project in the City of Buffalo" and was known for "guns and drugs." Based on that evidence, we conclude that the arresting officer's action in grabbing defendant's hand on the outside of his pants pocket as defendant reached inside the pocket was a "constitutionally justified intrusion designed to protect the safety of the officer[]" (*People v Robinson*, 278 AD2d 808, 809, *lv denied* 96 NY2d 787; *see Bracy*, 91 AD3d at 1297-1298). The arresting officer "had a reasonable basis for fearing for his safety and was not required to 'await the glint of steel' " (*People v Stokes*, 262 AD2d 975, 976, *lv denied* 93 NY2d 1028, quoting *People v Benjamin*, 51 NY2d 267, 271).

Given that the arresting officer, upon grabbing defendant's hand, touched an object through defendant's pocket that he believed to be a small handgun, "the officer did not act unlawfully in reaching into the pocket and removing the object" (*Bracy*, 91 AD3d at 1298; *see People v Davenport*, 9 AD3d 316, 316, *lv denied* 3 NY3d 705). Finally, because the arresting officer's conduct was lawful, defendant's oral statements to the police are not subject to suppression as fruit of the poisonous tree (*see generally People v Carter*, 39 AD3d 1226, 1226-1227, *lv denied* 9 NY3d 863).

All concur except FAHEY and SCONIERS, JJ., who dissent and vote to affirm in the following Memorandum: We respectfully dissent because we conclude that County Court properly granted defendant's motion to suppress physical evidence and his oral statements to the police. We agree with the majority that the police had a legitimate reason to request information from defendant (*see People v De Bour*, 40 NY2d 210, 220). Nevertheless, the court properly determined that the police lacked the necessary justification to escalate the encounter to a level three pat down of defendant. Pursuant to *De Bour*, "level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor" (*People v Moore*, 6 NY3d 496, 498-499). Here, there was no proof that defendant had committed a crime. Moreover, there had been no radio call or other report of a crime in the vicinity preceding this encounter. Defendant had merely stared at police officers while riding his bicycle, whereupon he rode the bicycle into the steps of a porch, fell off the bicycle, jumped up, and ran up the steps. When asked for identification, defendant responded that he had none. Also, defendant placed his hand in his

pocket at least three times, contrary to a police officer's requests that he not do so. "It is . . . well settled that actions that are 'at all times innocuous and readily susceptible of an innocent interpretation . . . may not generate a founded suspicion of criminality' " (*People v Riddick*, 70 AD3d 1421, 1422, *lv denied* 14 NY3d 844; *see People v Powell*, 246 AD2d 366, 369, *appeal dismissed* 92 NY2d 886). Here, the fact that defendant put his hand in his pocket, "absent any indication of a weapon such as the visible outline of a gun or the audible click of the magazine of a weapon, does not establish the requisite reasonable suspicion that defendant had committed or was about to commit a crime" (*Riddick*, 70 AD3d at 1422-1423). In addition, the fact "that this may have been a high-crime area . . . could not itself validate the search since no other objective indicia of criminality existed to supply the requisite reasonable suspicion for the forcible stop and frisk" (*Powell*, 246 AD2d at 369-370; *see Riddick*, 70 AD3d at 1423). Importantly, this Court has consistently held that "[g]reat deference is afforded the findings of the suppression court" (*People v Davis*, 48 AD3d 1120, 1122, *lv denied* 10 NY3d 957, citing *People v Prochilo*, 41 NY2d 759, 761; *see e.g. People v Peay*, 77 AD3d 1309, 1310, *lv denied* 15 NY3d 955; *People v Williams*, 202 AD2d 976, 976, *lv denied* 83 NY2d 916) and, affording appropriate deference to the findings of the suppression court, we conclude that an affirmance is warranted.

Entered: May 3, 2013                          Frances E. Cafarell
                                              Clerk of the Court