Appeal from an order of the Supreme Court, Erie County *1291 (Russell E Buscaglia, A.J.), dated November 30, 2012. The order granted that part of the omnibus motion of defendant to suppress physical evidence and his oral statements to the police.
It is hereby ordered that the order so appealed from is affirmed.
Memorandum: The People appeal from an order granting that part of defendant’s omnibus motion to suppress physical evidence, i.e., a handgun, and defendant’s oral statements to the police. The People contend that the police had the requisite reasonable suspicion to justify their pursuit of defendant, and that suppression of the evidence and oral statements thereafter obtained from defendant is not warranted. We reject that contention and, inasmuch as Supreme Court’s suppression determination is supported by the record (see People v Martinez, 105 AD3d 1458, 1459 [2013]; see generally People v Prochilo, 41 NY2d 759, 761 [1977]), we affirm the order.
The testimony at the suppression hearing established that, on March 25, 2012, a housing officer of the Buffalo Police Department received a tip from an unnamed arrestee that there were two guns “stashed behind” a house located at 118 Montana Avenue in the City of Buffalo. The area in which the house was located was known to the officer and his partner as a high-crime area. At approximately 4:40 p.m. on that date, the two officers drove their patrol vehicle to that house to investigate the tip. Upon turning onto Montana Avenue, the officers saw two men near the curb in front of house number 116 or 118, crossing the street toward house number 119. The officer driving the patrol vehicle recognized one of the men as the victim of a recent shooting, and he stopped the patrol vehicle to speak with him. That man stopped to talk to the officer, but his companion — defendant — began walking away “swiftly.” The second officer, curious as to why defendant was “going away so fast,” exited the patrol vehicle and asked defendant his name. According to the testimony of the second officer, defendant did not respond, but turned around, “grabbed the right side of his jacket,” and “tried to pull something out of it.” The second officer yelled at defendant, “don’t do it,” but defendant continued to pull at his jacket pocket. The second officer drew his pistol and pointed it at defendant, while continuing to yell, “don’t do it.” Defendant then began to run away, although we note that the second officer provided conflicting testimony whether defendant had begun to run away before he yelled at defendant. The two officers pursued defendant, ultimately apprehending him and recovering a loaded handgun from his jacket pocket. Notably, the officers testified that defendant and his companion were doing *1292 nothing illegal when they first saw them, and that they became suspicious only because defendant and his companion were in the vicinity of the house identified in the tip. Furthermore, the first officer testified that, although defendant’s jacket was “thin,” he did not see the outline of a weapon in defendant’s jacket, and the second officer testified that he did not see a bulge or the outline of a weapon in defendant’s jacket until after he began to pursue defendant.
The People contend that the court erred in determining that the tip the officer received from the unnamed arrestee was unreliable. According to the People, the record establishes that the tip was reliable and the court therefore should have considered the tip as a factor in support of a determination that the officers had the requisite reasonable suspicion to justify their pursuit of defendant, particularly inasmuch as defendant was standing near the house identified in the tip (see generally People v De Bour, 40 NY2d 210, 222-223 [1976]). We reject that contention. The People contend that the tip was reliable because it was based upon the arrestee’s personal knowledge and because “it is against the law to provide the police with false information about a crime.” Even assuming, arguendo, that the arrestee’s basis of knowledge was sufficient because he had personally observed guns “stashed” behind house number 118, we conclude that the People did not establish “that the specific information given [by the arrestee was] reliable” (People v DiFalco, 80 NY2d 693, 697 [1993]; see generally People v Johnson, 66 NY2d 398, 402-402 [1985]). The arrestee did not provide the officer with any information about who placed the guns behind house number 118, the precise location of the guns behind the house, or the type of guns. Moreover, the officer previously had never met the arrestee or received reliable information from him.
We further conclude that the court properly determined that, when the officers initially approached defendant, they had no more than an “objective, credible reason” to request information (People v Moore, 6 NY3d 496, 498-499 [2006], citing De Bour, 40 NY2d at 223 [2006]). The officers acknowledged at the suppression hearing that there was nothing about the behavior of defendant or his companion that the officers found suspicious other than their proximity to house number 118. Although there was some testimony that defendant was standing in front of house number 118 when the officers first saw him, the court did not find that testimony credible but, rather, credited other testimony that defendant was standing in front of house number 116. That credibility determination is entitled to great defer *1293 ence (see Prochilo, 41 NY2d at 761; Martinez, 105 AD3d at 1459). Furthermore, the first officer testified that he did not ask defendant’s companion from where he was coming, nor did either officer testify that he saw the direction from which defendant was coming, and thus there is no credible evidence in the record supporting the claim that defendant was connected with the guns allegedly “stashed behind” house number 118. Defendant’s presence on the curb in the general vicinity of house number 116 was “ ‘readily susceptible of an innocent interpretation,’ ” i.e., that defendant was simply crossing the street (People v Riddick, 70 AD3d 1421, 1422 [2010], lv denied 14 NY3d 844 [2010]), and “[t]he fact that defendant was located in a high[-]crime area does not by itself justify the police conduct where, as here, there were no other objective indicia of criminality” (People v Stevenson, 273 AD2d 826, 827 [2000]). We therefore conclude that, at the time the officers approached defendant and his companion, they were limited to a level one intrusion, i.e., a request for information (see generally De Bour, 40 NY2d at 223). Thus, the second officer’s request for defendant to give his name was permissible.
We reject the People’s contention that subsequent events gave rise to a reasonable suspicion that defendant had committed or was about to commit a crime, as was required to justify the police pursuit of defendant when defendant did not respond to the officer’s question (see People v Cady, 103 AD3d 1155, 1156 [2013]; Riddick, 70 AD3d at 1422). We have previously held that “ ‘the fact that defendant reached for his waistband, absent any indication of a weapon such as the visible outline of a gun or the audible click of the magazine of a weapon, does not establish the requisite reasonable suspicion that defendant had committed or was about to commit a crime’ ” (Cady, 103 AD3d at 1156; see Riddick, 70 AD3d at 1422-1423). Here, although defendant was reaching for his jacket pocket as he walked or ran away from the second officer, neither officer testified that he saw a bulge or the outline of a weapon in defendant’s jacket. Rather, the second officer believed that defendant had a gun only because, in his experience, if an individual pulled vigorously at an object in his or her pocket, but the object did not come out easily, that object usually was a weapon. While we are mindful that an officer may rely on his or her knowledge and experience in determining whether reasonable suspicion exists, we respectfully disagree with our dissenting colleagues that the above circumstances were sufficient to establish the requisite reasonable suspicion “in the absence of other objective indicia of criminality” (Cady, 103 AD3d at 1156 [internal quotation marks omitted]; see Riddick, 70 AD3d at 1423). Here, before *1294 pursuing defendant, the second officer knew only that defendant was walking across the street in a high-crime area, in the general vicinity of a house where an unnamed person of unestablished reliability claimed to have seen guns, and that, when the police approached, defendant walked or ran away while grabbing at his jacket pocket. We cannot conclude, based on the totality of those circumstances, that the police were justified in pursuing defendant (see People v Holmes, 81 NY2d 1056, 1058 [1993]; Cady, 103 AD3d at 1155-1156; Riddick, 70 AD3d at 1421-1423).
We note that, although it appears from the dissent that there was testimony at the suppression hearing that defendant took an “aggressive fighter stance,” there was no such testimony. Rather, that phrase was used only by defense counsel, when reading the second officer’s testimony from the transcript of the felony hearing, in an attempt to impeach the officer regarding when he drew his service revolver. Thus, there was no evidence before the suppression court that defendant took an “aggressive fighter stance” (see People v Hall, 208 AD2d 1044, 1046 [1994]; People v Blanchard, 177 AD2d 854, 856 [1991], lv denied 79 NY2d 918 [1992]; People v Gilman, 135 AD2d 951, 952-953 [1987], lv denied 71 NY2d 896 [1988]).
The People’s reliance on People v Bachiller (93 AD3d 1196, 1196-1198 [2012], lv dismissed 19 NY3d 861 [2012]) is misplaced. In that case, the police were responding to a report of a possible stabbing when they noticed the defendant in a “heated argument” with another man and then saw the defendant chase that man through adjacent backyards (id. at 1196). The defendant conceded that “the report of a possible stabbing coupled with the responding officer’s observations at the scene furnished the police with the requisite ‘founded suspicion that criminal activity [was] afoot’ sufficient to justify the common-law right of inquiry” (id., quoting Moore, 6 NY3d at 498). Having obtained the requisite founded suspicion, the police then observed the defendant walk briskly away from them and “grab and hold onto an object in his waistband area” (id. at 1197). In determining that suppression was not warranted, we noted that the defendant “was not simply reaching in the direction of his waistband. Rather, the two officers as well as the initial responding officer, who was also pursuing defendant, testified that defendant was clutching an object that appeared to be a gun at his waistband” (id. at 1198 [emphasis added]). Here, neither officer testified that he observed any object — let alone an object that appeared to be a gun — in defendant’s pocket before beginning to pursue defendant.
*1295 All concur except Scudder, EJ., and Peradotto, J, who dissent and vote to reverse in accordance with the following memorandum.