People v Williams (2021 NY Slip Op 00983)





People v Williams


2021 NY Slip Op 00983


Decided on February 11, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, NEMOYER, TROUTMAN, AND BANNISTER, JJ.


1232 KA 16-02227

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOSHUA WILLIAMS, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Douglas A. Randall, J.), rendered September 13, 2016. The judgment convicted defendant, upon a plea of guilty, of attempted criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the plea is vacated, that part of defendant's omnibus motion seeking to suppress physical evidence and statements is granted, the indictment is dismissed, and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree (Penal Law §§ 110.00, 265.03 [3]), defendant contends that County Court erred in refusing to suppress physical evidence obtained following a vehicle and traffic stop, as well as statements he thereafter made to officers. We agree.
Officers on patrol stopped the vehicle in which defendant was a passenger after observing that the driver was not wearing a seatbelt. Defendant was the backseat passenger and, as officers were investigating the validity of the occupants' licenses, defendant appeared nervous and turned his body toward his waistband, blocking the officers' view of his hands. When asked to remove his hands from the waistband area of his pants, defendant complied, stating that he was looking for a bottle cap upon which to chew. Once it was discovered that none of the occupants had a valid driver's license, the officers asked the occupants to exit the vehicle. At that point, defendant "bladed away" from the officers while "reach[ing] for his waistband."
As one of the officers prepared to conduct a pat frisk, defendant "pulled away and ran." While he was running, defendant had his hands in front of him, "huddled in." Officers thereafter pursued defendant and took him into custody. Ultimately, a weapon was found in a yard in which defendant had fallen during the pursuit. Although defendant denied possession of the gun, he informed officers that he knew it was going to be tested and stated that, "if it [came] back with a body on it or it's dirty," then they would "have to sit down and talk again." At the suppression hearing, the officers candidly admitted that they never saw a bulge or any other indication of an object in defendant's waistband and that they never saw defendant actually touch his waistband. The court refused to suppress the physical evidence and the statements, and defendant thereafter pleaded guilty.
We agree with defendant that his waiver of the right to appeal is not valid and thus does not preclude our review of his challenge to the suppression ruling (cf. People v Kates, 162 AD3d 1627, 1628 [4th Dept 2018], lv denied 32 NY3d 1065 [2018], reconsideration denied 32 NY3d 1173 [2019]; People v Adames, 158 AD3d 1289, 1289 [4th Dept 2018], lv denied 31 NY3d 1077 [2018]; People v Joubert, 158 AD3d 1314, 1315 [4th Dept 2018], lv denied 31 NY3d 1014 [*2][2018]). In our view, the "purported waiver of the right to appeal is not enforceable inasmuch as the totality of the circumstances fails to reveal that defendant 'understood the nature of the appellate rights being
waived' " (People v Youngs, 183 AD3d 1228, 1228 [4th Dept 2020], lv denied 35 NY3d 1050 [2020], quoting People v Thomas, 34 NY3d 545, 559 [2019], cert denied — US &mdash, 140 S Ct 2634 [2020]). Here, "[t]he written waiver of the right to appeal signed by defendant and the verbal waiver colloquy by [the court] together improperly characterized the waiver as 'an absolute bar to the taking of a direct appeal and the loss of attendant rights to counsel and poor person relief' " (People v McMillian, 185 AD3d 1420, 1421 [4th Dept 2020], lv denied 35 NY3d 1096 [2020], quoting Thomas, 34 NY3d at 565). We note that the better practice is for the court to use the Model Colloquy, which "neatly synthesizes . . . the governing principles" (Thomas, 34 NY3d at 567, citing NY Model Colloquies, Waiver of Right to Appeal).
With respect to the merits of the suppression motion, we conclude that the officers lacked the requisite reasonable suspicion to pursue defendant. "[T]he police may pursue a fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime . . . Flight alone is insufficient to justify pursuit because an individual has a right to be let alone and refuse to respond to police inquiry . . . However, a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010] [internal quotation marks omitted]; see People v Rainey, 110 AD3d 1464, 1465 [4th Dept 2013]; see generally People v Sierra, 83 NY2d 928, 929 [1994]). In contrast, "actions that are 'at all times innocuous and readily susceptible of an innocent interpretation . . . may not generate a founded suspicion of criminality' " (Riddick, 70 AD3d at 1422; see People v Holmes, 81 NY2d 1056, 1058 [1993]).
Here, the officers stopped the vehicle for a traffic infraction as opposed to a call related to a particular crime. Although defendant appeared to reach toward his waistband, he never touched his waistband and there was no other indication of a weapon, such as a bulge or the visible outline of a gun (see Riddick, 70 AD3d at 1422-1423). A suspect's action in grabbing at his or her waistband, standing alone, is insufficient to establish reasonable suspicion of a crime (see e.g. People v Elliott, 140 AD3d 1752, 1752-1753 [4th Dept 2016]; People v Clermont, 133 AD3d 612, 614 [2d Dept 2015], lv denied 27 NY3d 1149 [2016]; People v Haynes, 115 AD3d 676, 676-677 [2d Dept 2014]).
Defendant's nervousness, use of a bottle cap, and "blading" do not provide additional specific circumstances indicating that defendant was engaged in criminal activity. There is no doubt that defendant engaged in furtive and suspicious activity and that his pattern of behavior, viewed as a whole, was suspicious, but there is nothing in this record to establish that the officers had a reasonable suspicion of criminal conduct to justify the pursuit (see People v Gerard, 94 AD3d 592, 592-593 [1st Dept 2012]; cf. People v Simmons, 133 AD3d 1275, 1276 [4th Dept 2015], lv denied 27 NY3d 1006 [2016]).
We therefore conclude that the pursuit of defendant was unlawful and that the physical evidence seized by the police and the statements made by defendant to the police following the unlawful seizure should have been suppressed. As a result, defendant's guilty plea must be vacated and the indictment dismissed, and we remit the matter to County Court for proceedings pursuant to CPL 470.45 (see Elliott, 140 AD3d at 1753; Riddick, 70 AD3d at 1424).
All concur except Centra, J.P., and NeMoyer, J., who dissent and vote to affirm in the following memorandum: County Court found that the totality of the circumstances supplied the reasonable suspicion necessary to justify the pursuit of the fleeing defendant. The majority now rejects that finding and concludes that law enforcement lacked the requisite reasonable suspicion to pursue defendant. We cannot agree. We therefore respectfully dissent and vote to affirm.
The facts are largely undisputed. During a nighttime patrol of a high crime area in the City of Rochester, officers observed a vehicle being operated by an unbelted driver. The vehicle was pulled over; defendant was the backseat passenger. During the license checks, the officers observed defendant for several minutes. In this period, one officer testified, defendant appeared "very nervous," repeatedly looked around the vehicle, moved his hands in the vicinity of his [*3]waistband, and ultimately "bladed" his body — i.e., turned his body away from the officer such that defendant's hands could not be seen. When the officer asked defendant what he was looking for, defendant picked up a plastic bottle cap, put it in his mouth, and said that he chews on plastic caps all the time. The officer, understandably, found this explanation to be suspicious.
Once the officers determined that neither the driver nor the passengers had valid licenses and that the vehicle would therefore need to be towed, all three occupants were directed to exit the vehicle. When defendant exited the vehicle, the officer again observed defendant "blading" his body away from the officer and reaching toward his waistband. The officer testified that, based on his training and experience, defendant's action indicated that he was concealing a gun. Now concerned for his safety and the safety of his colleagues, the officer reached over to defendant to conduct a pat frisk. At that point, however, defendant fled, and the officers pursued him.
We acknowledge that flight alone is insufficient to justify pursuit (see People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010]). Grabbing a waistband, standing alone, is likewise insufficient to justify pursuit (see People v Elliott, 140 AD3d 1752, 1752-1753 [4th Dept 2016]). Nevertheless, flight is a proper consideration in conjunction with other attendant circumstances, including the suspect's suspicious behavior, the time of the stop, and the location of the stop (see People v Martinez, 80 NY2d 444, 448 [1992]). Indeed, in determining whether a pursuit was justified by the requisite reasonable suspicion, the suppression court should not focus narrowly on any single factor; rather, the court should evaluate the totality of the circumstances and take into account the realities of everyday life unfolding before a trained officer (see People v Walker, 149 AD3d 1537, 1538 [4th Dept 2017], lv denied 30 NY3d 954 [2017]; People v Bachiller, 93 AD3d 1196, 1197 [4th Dept 2012], lv dismissed 19 NY3d 861 [2012]).
Here, defendant's suspicious and evasive actions during the routine traffic stop, coupled with his nonsensical response about the bottle cap and his eventual flight, supplied the trained officer with reasonable suspicion to justify the pursuit. Indeed, the officers would have neglected their duty had they allowed defendant to flee unchallenged into the night, and suppression will serve only to hamstring law enforcement's efforts to protect the law-abiding residents of our most dangerous communities.
Entered: February 11, 2021
Mark W. Bennett
Clerk of the Court