People v Cleveland (2023 NY Slip Op 03597)

People v Cleveland

2023 NY Slip Op 03597

Decided on June 30, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 30, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, CURRAN, MONTOUR, AND OGDEN, JJ.

321 KA 17-02102

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KEVIN CLEVELAND, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered May 24, 2017. The judgment convicted defendant upon a jury verdict of criminal possession of a controlled substance in the fourth degree and aggravated unlicensed operation of a motor vehicle in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: On appeal from a judgment convicting him following a jury trial of criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]) and aggravated unlicensed operation of a motor vehicle in the second degree (Vehicle and Traffic Law § 511 [2] [a] [iv]), defendant contends that Supreme Court erred in denying his request to suppress crack cocaine that he threw to the ground while being pursued on foot by the police. According to defendant, the pursuit was unlawful because the officers did not reasonably suspect that he had committed, was committing, or was about to commit a crime. We conclude that the pursuit was justified and that the court therefore properly refused to suppress the cocaine.
On the night in question, two uniformed officers were on patrol in an unmarked police car when they observed a woman throw a glass bottle at a motor vehicle. The bottle struck the vehicle and shattered, whereupon the vehicle came to a sudden stop in the middle of the street. The driver, later identified as defendant, exited the vehicle and approached the woman in an aggressive manner, yelling at her with his fists clenched. Suspecting that defendant was going to attack the woman, the officers identified themselves and directed defendant to stop. At the suppression hearing, one of the officers testified that defendant "looked in [their] direction, began to back away, and then quickly turned and began digging in the front of his waistband and running in a southward direction," leaving the vehicle with the driver's door open. Because defendant had turned his back to them, the officers could not see what defendant was doing with his hands, but they "could . . . see his arms moving in the front of his body." The officers gave chase and observed defendant, while running, discard what appeared to be a small plastic bag. Defendant eventually surrendered to the officers, who recovered the bag and determined that it contained crack cocaine.
It is well settled that "the police may forcibly stop or pursue an individual if they have information which, although not yielding the probable cause necessary to justify an arrest, provides them with a reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Martinez, 80 NY2d 444, 447 [1992]). "[A] defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion" (People v Sierra, 83 NY2d 928, 929 [1994]; see People v Woods, 98 NY2d 627, 628 [2002]). We have repeatedly held, however, that the fact that a defendant "reached for his waistband, absent any indication of a weapon such as the visible outline of a gun or the audible click of the magazine of [*2]a weapon, does not establish the requisite reasonable suspicion" (People v Cady, 103 AD3d 1155, 1156 [4th Dept 2013]; see People v Williams, 191 AD3d 1495, 1498 [4th Dept 2021]; People v Ingram, 114 AD3d 1290, 1293 [4th Dept 2015], appeal dismissed 24 NY3d 1201 [2015]; People v Riddick, 70 AD3d 1421, 1422-1423 [4th Dept 2010], lv denied 14 NY3d 844 [2010]).
Here, defendant contends that his flight and "innocuous" arm movements did not provide the reasonable suspicion of criminality required for police pursuit. As defendant points out, although the officers saw that defendant was grabbing at his front waistband, they did not observe an indication of a weapon such as a bulge in his clothing or the outline of a gun. We agree with defendant that his arm movements directed at his waistband and his flight would not, without more, justify police pursuit. As the court determined, however, it was reasonable for the officers to suspect that defendant was about to commit a crime because he approached the woman in an aggressive manner with clenched fists while yelling at her. The officers thus properly ordered defendant to stop and could have lawfully frisked him had he not run away. Because the stop was supported by reasonable suspicion, we conclude that the subsequent pursuit was also supported by reasonable suspicion, especially considering that, immediately following the stop, defendant turned his back to the officers, grabbed at his waistband, and then fled on foot, leaving his vehicle in the middle of the street with its driver's door open.
Although it is true, as defendant points out, that he was no longer an immediate threat to the woman once he started to run away, that fact does not alter our conclusion that the officers had reasonable suspicion to believe that defendant was about to commit a crime and therefore they were justified in "forcibly detaining [him], or pursuing [him] for the purpose of detaining [him]" (Martinez, 80 NY2d at 447). The officers' reasonable suspicion justifying the detention of defendant did not cease to exist when defendant turned and ran. In our view, it cannot be said that defendant's actions, viewed in totality, were " 'at all times innocuous and readily susceptible of an innocent interpretation' " (Riddick, 70 AD3d at 1422; cf. People v Johnson, — NY3d &mdash, 2023 NY Slip Op 02734 [2023]). Although "[a] suspect's action in grabbing at his or her waistband, standing alone, is insufficient to establish reasonable suspicion of a crime" (Williams, 191 AD3d at 1498 [emphasis added]), defendant did far more than just grab at his waistband.
We have reviewed defendant's remaining contentions and conclude that none warrants modification or reversal of the judgment.
All concur except Ogden, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent and would reverse the judgment, grant that part of the omnibus motion seeking to suppress evidence, and dismiss the indictment inasmuch as I do not believe that the reasonable suspicion that justified the officers' stop of defendant as he approached the woman remained extant after he ceased his approach and retreated. Contrary to the conclusion reached by the majority, once defendant was running away, he was no longer about to commit a crime against the woman.
With respect to police pursuit, "it is well settled that the police may pursue a fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime" (People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010] [internal quotation marks omitted]). "[A] defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (id. [internal quotation marks omitted]). It was certainly reasonable for the officers to suspect that defendant was about to commit a crime as he approached the woman in an "aggressive manner." However, once officers directed defendant to stop and he stopped approaching the woman, the reasonable suspicion that defendant was about to commit a crime ceased to exist at that point. Although the majority concludes the reasonable suspicion that existed earlier continued after defendant turned and ran, the majority does not identify any specific circumstances indicative of criminal activity justifying that conclusion (see id.).
In particular, defendant's digging at his waistband, flight, and leaving his car in the street "do not provide additional specific circumstances indicating that defendant was engaged in criminal activity" (People v Williams, 191 AD3d 1495, 1498 [4th Dept 2021]; see Riddick, 70 AD3d at 1422). While defendant's actions, "viewed as a whole, [may have been] suspicious, . . . [*3]there is nothing in this record to establish that the officers had a reasonable suspicion" that defendant had committed, was committing, or was about to commit a
crime (Williams, 191 AD3d at 1498). Therefore, I would reverse.
Entered: June 30, 2023
Ann Dillon Flynn
Clerk of the Court