People v Hernandez (2024 NY Slip Op 00196)

People v Hernandez

2024 NY Slip Op 00196

Decided on January 17, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 17, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
ROBERT J. MILLER
LARA J. GENOVESI
LILLIAN WAN, JJ.

2020-06384
 (Ind. No. 82/19)

[*1]The People of the State of New York, respondent,
v
Naldo Hernandez, appellant.

Patricia Pazner, New York, NY (Sean H. Murray of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Ellen C. Abbot, and Rachel Cregier of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Ushir Pandit-Durant, J.), rendered March 3, 2020, convicting him of criminal possession of a weapon in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement he made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement he made to law enforcement officials are granted, the plea is vacated, and the matter is remitted to the Supreme Court, Queens County, for further proceedings on the indictment.
On October 31, 2018, New York City Police Officer Lenin Garcia and two other uniformed police officers were on patrol in an unmarked vehicle in Corona, Queens. In the preceding six months, there had been 10 robberies reported in this general area, and Officer Garcia had unspecified "intel" that two Hispanic men in the area had been robbing people by punching them or hitting them over the head with objects. However, on this particular night, no robberies or assaults had been reported in the area.
At approximately 10:22 p.m., from inside the police vehicle, Officer Garcia witnessed two men on foot and one man on a bicycle at an intersection. The two men on foot were "holding onto the individual on the bike, and . . . pushing him and shoving him." When the three men noticed the police officers approaching, the man on the bicycle made eye contact with Officer Garcia and mumbled something unintelligible. One of the two men on foot began running away from the officers, and the man on the bicycle fled in a different direction. The other man on foot, the defendant, began "walking fast at a double pace."
The police vehicle stopped directly in front of the defendant, and Officer Garcia and another officer exited the vehicle. As Officer Garcia approached the defendant, one of the officers asked what was "going on" with the individual at the intersection. The defendant, in a state of surprise, "bladed himself" and stepped away from Officer Garcia. Officer Garcia described "blading" as the defendant "pulling his right side of his body away from [the officers/police vehicle] [*2]and [placing] his left foot towards [the officers/police vehicle] and his right on the back." The defendant asked why he was being stopped and denied any wrongdoing. Officer Garcia immediately grabbed the defendant by the jacket and "touched" his right rear pants pocket. Upon doing so, Officer Garcia felt what he believed to be a gun. Officer Garcia and another officer brought the defendant to the ground and handcuffed him before recovering a gun in a tied-up sock from his pants pocket.
At the precinct station, the defendant requested a phone call. As Officer Garcia approached to provide him with a phone, the defendant said, "I was trying to prevent a shooting from happening. My friend had the gun. I took it away from him to prevent him from shooting the other individual."
The defendant was charged, inter alia, with criminal possession of a weapon in the second degree and resisting arrest. Thereafter, he moved to suppress the gun and the statement that he made at the precinct station. At the suppression hearing, Officer Garcia was the sole witness. The Supreme Court denied those branches of the defendant's omnibus motion which were to suppress the gun and the statement. The defendant thereafter pleaded guilty to one count of criminal possession of a weapon in the second degree, and the court imposed the promised sentence. The defendant appeals, contending that the court erred in denying suppression of the gun and the statement.
Contrary to the People's contention, the record does not demonstrate that the defendant knowingly, voluntarily, and intelligently waived his right to appeal (see People v Bradshaw, 18 NY3d 257, 264-265). The Supreme Court did not discuss the appeal waiver until after the defendant had already admitted his guilt as part of the plea agreement (see People v Heft, 220 AD3d 806; People v Blake, 210 AD3d 901; People v Diallo, 196 AD3d 598, 598). Based on the totality of the circumstances, including the defendant's relatively young age and his limited contact with the criminal justice system, the record does not establish that he understood the nature of the appellate rights he was waiving (see People v Adyl K., 187 AD3d 1208, 1208). Accordingly, in the absence of a knowing, voluntary, and intelligent waiver of the right to appeal, the defendant retained his right to challenge the denial of those branches of his omnibus motion which were to suppress physical evidence and the statement he made to law enforcement officials (see CPL 710.70[2]; People v Crawford, 110 AD3d 916, 916).
Further, contrary to the People's contention, the defendant's contention that his statement should have been suppressed as the fruit of an unlawful arrest is preserved for appellate review because the defendant made this argument in his omnibus motion and the Supreme Court decided the issue (see People v Jones, 202 AD3d 821, 824).
In People v De Bour (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters with civilians (see People v Moore, 6 NY3d 496, 498-499). "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (id. at 498-499; see People v De Bour, 40 NY2d at 223; People v Rhames, 196 AD3d 510, 512). "To conduct a stop and frisk under De Bour level three, the police must at a minimum have reasonable suspicion that the particular person has committed or is about to commit a crime or that the person is armed or dangerous" (People v Johnson, 40 NY3d 172, 175-176 [citation and internal quotation marks omitted]).
Here, the issue is whether Officer Garcia had reasonable suspicion that the defendant was involved in a crime and that Officer Garcia was in danger of physical injury by virtue of the defendant being armed so as to justify grabbing the defendant and touching his pocket (see CPL [*3]140.50[1], [3]). "Reasonable suspicion represents that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (People v Woods, 98 NY2d 627, 628 [internal quotation marks omitted]; see People v Bowers, 148 AD3d 1042, 1043), and resolution of this issue requires an evaluation of the totality of the circumstances (see People v Loper, 115 AD3d 875, 879).
Here, giving deference to the Supreme Court's credibility determination (see generally People v Beer, 146 AD3d 895, 895), Officer Garcia did not have the requisite reasonable suspicion to detain and frisk the defendant. The unusual interaction that Officer Garcia described regarding the man on the bicycle, coupled with reports and "intel" as to robberies in the area, may have provided circumstances giving rise to a founded suspicion that criminal activity was afoot—i.e., level two under De Bour. Thus, Officer Garcia would have had a right of inquiry that permitted him to approach the defendant. However, rather than conducting meaningful inquiry to further his investigation, after the police vehicle stopped in front of the defendant, Officer Garcia exited the vehicle and immediately grabbed the defendant and touched his right rear pants pocket.
Although Officer Garcia testified that "it was possible" that a robbery was about to take place, no one reported a robbery that evening, not even the man on the bicycle, who fled from the police rather than approaching them to report a crime. To the extent that Officer Garcia relied upon "intel" about two Hispanic men committing robberies in the area, Officer Garcia never specifically testified that, prior to exiting the vehicle and grabbing the defendant, he observed that the defendant or the other man on foot were Hispanic. Further, the "intel" related to robberies committed by punching or hitting victims over the head, and Officer Garcia did not see either with respect to the man on the bicycle. More important, because Officer Garcia's "intel" did not include any indicia of gunpoint robberies, it would not lead an ordinarily prudent person to believe that there was a gun in the defendant's back pocket. Although Officer Garcia testified that the defendant bladed his body, which may suggest criminal activity afoot under certain circumstances or give an officer reason to proceed with caution, under the totality of the circumstances, the defendant's mere blading posture did not provide Officer Garcia with the requisite reasonable suspicion to grab the defendant and touch his pocket (see People v Williams, 191 AD3d 1495, 1498; see also People v Johnson, 40 NY3d at 174-177; People v Wright, 195 AD3d 1371, 1371-72). Accordingly, the subsequent arrest was unlawful, and both the gun and the statement should have been suppressed.
The defendant's remaining contentions either are without merit or need not be reached in light of our determination.
BRATHWAITE NELSON, J.P., MILLER, GENOVESI and WAN, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court