People v Cleveland (2025 NY Slip Op 02144)

People v Cleveland

2025 NY Slip Op 02144

Decided on April 15, 2025

Court of Appeals

Singas

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 15, 2025

No. 36 

[*1]The People & c., Respondent,
v
Kevin Cleveland, Appellant.

Bradley E. Keem, for appellant. 
Martin P. McCarthy, II, for respondent. 

SINGAS, J.

We have previously held that an individual's flight from a level one or two police encounter, without more, does not provide the reasonable suspicion necessary to pursue them (see People v Holmes, 81 NY2d 1056, 1058 [1993]; People v May, 81 NY2d 725, 728 [1992]; see generally People v De Bour 40 NY2d 210 [1976]). We now hold that when a suspect flees during a lawful level three stop founded on reasonable suspicion of criminal activity, police may pursue the suspect.
Defendant was arrested after abandoning a plastic bag containing crack cocaine while being pursued by police. Before trial, defendant moved to suppress this evidence on the ground that the pursuit was unlawful. At the suppression hearing, Officer Kyle Eisenhauer of the Rochester Police Department testified that, on the night of the arrest, he was in uniform in an unmarked patrol vehicle with his partner, Officer Jeremy Nellist. The two were driving behind a sedan when a woman on the sidewalk threw a glass bottle at the sedan, which then came to a stop in the middle of the street. Defendant exited the driver's door of the sedan and "in a very aggressive manner" began yelling at the woman and approached her with clenched fists. According to Eisenhauer, "[i]t appeared [that defendant] was . . . about to attack" the woman. Eisenhauer and Nellist exited their patrol car and told defendant to stop, and defendant "stopped and looked in [their] direction." The uniformed officers were about 25 feet away from defendant without their guns drawn. Defendant "began to back away, and then quickly turned and began digging in the front of [*2]his waistband and running" away from the officers, leaving his car in the middle of the street with the driver's door open. The officers followed in pursuit.
About 50 feet into the chase, defendant "discarded what looked like a plastic bag with some type of . . . white substance, onto the ground" in a vacant lot and then continued running. Eisenhauer believed that the plastic bag may have contained drugs. Eisenhauer and Nellist continued the chase into another vacant lot when defendant stopped, and the officers ordered defendant to the ground and arrested him. Nellist returned to the location where they had seen defendant toss the bag and located a clear plastic bag containing what appeared to be crack cocaine. Defendant's car was gone.
On cross-examination, Eisenhauer admitted that when defendant "stopped and looked at us," "any type of physical attack" against the woman had been prevented. But Eisenhauer asserted that, when defendant stopped, he and Nellist "had to deal with the fact that [defendant] backed away and began making those furtive movements in front of his waistband and running away from us." Eisenhauer confirmed that when defendant discarded the plastic bag, the officers had been chasing him for approximately 50 feet, and defendant "was no longer going toward the woman."
Supreme Court largely credited Eisenhauer's account of the incident, determined that the pursuit was lawful, and denied defendant's suppression motion. Defendant proceeded to a jury trial, and the jury found defendant guilty of criminal possession of a controlled substance in the fourth degree and aggravated unlicensed operation of a motor vehicle in the second degree.
The Appellate Division affirmed (see 217 AD3d 1515 [4th Dept 2023]). "Because the stop was supported by reasonable suspicion," the Court concluded, "the subsequent pursuit was also supported by reasonable suspicion, especially considering that, immediately following the stop, defendant turned his back to the officers, grabbed at his waistband, and then fled on foot, leaving his vehicle in the middle of the street with its driver's door open" (id. at 1516-1517). One Justice dissented (see id. at 1517). In the dissenting Justice's view, "once officers directed defendant to stop and he stopped approaching the woman, the reasonable suspicion that defendant was about to commit a crime ceased to exist at that point" (id. at 1518). The dissenting Justice further reasoned that "defendant's digging at his waistband, flight, and leaving his car in the street do not provide additional specific circumstances indicating that defendant was engaged in criminal activity" (id.). The dissenting Justice granted defendant leave to appeal.
A court's focus during "any analysis of a governmental invasion of a citizen's person" must be on the reasonableness of the police conduct (People v Batista, 88 NY2d 650, 653 [1996]). Under the four-tiered framework set out in De Bour, pursuit of a fleeing suspect constitutes a level three detention, for which the police must "have a reasonable suspicion that defendant has committed or is about to commit a crime" (People v Martinez, 80 NY2d 444, 446 [1992]; see id. at 447, citing People v Leung, 68 NY2d 734, 736 [1986]). Like a level three stop, pursuit results in "infringement on freedom of movement," but "a lesser interference with freedom than does a[ level four] arrest" (id. at 447).[FN1] Thus, "a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity" may give rise to a lawful pursuit (People v Sierra, 83 NY2d 928, 929 [1994]). "Flight alone, however, or even in conjunction with equivocal circumstances that might justify a police request for information, is insufficient to justify pursuit because an individual has a right to be let alone and refuse to respond to police inquiry" (Holmes, 81 NY2d at 1058 [internal quotation marks and citations omitted]; see May, 81 NY2d at 728; see also People v Moore, 6 NY3d 496, 498-500 [2006]; People v Howard, 50 NY2d 583, 590-592 [1980]).
"A stop based on reasonable suspicion will be upheld so long as the intruding officer can point to 'specific and articulable facts which, along with any logical deductions, reasonably prompted th[e] intrusion' " (People v Brannon, 16 NY3d 596, 602 [2011], quoting People v Cantor, 36 NY2d 106, 113 [1975]). "[W]hether police conduct in any particular case conforms to De Bour is a mixed question of law and fact" (People v Barksdale, 26 NY3d 139, 143 [*3][2015], quoting People v McIntosh, 96 NY2d 521, 524 [2001]). Therefore, the Court's "review is limited to whether there is evidence in the record supporting the lower courts' determinations" (id. [internal quotation marks omitted]).
Initially, defendant suddenly stopped in the middle of the road, exited his vehicle, leaving a car apparently unattended with the door open, and approached the woman with clenched fists. Given the woman on the sidewalk's violent actions precipitating the encounter, the abrupt way in which defendant stopped his vehicle, and the aggressive manner in which he approached the woman, the record supports the lower courts' determination that it was reasonable for the officers to believe that defendant might menace, assault, or commit another crime against the woman.
Defendant argues—and the Appellate Division dissent concluded—that even if the officers initially had the reasonable suspicion necessary to temporarily detain him, it evaporated when he stopped approaching the woman in response to the officers' instruction because he no longer posed a threat to her. Thus, according to defendant, when he turned and ran, the officers' initial suspicion did not justify their pursuit.
We reject the notion that a suspect can legally flee a level three stop so long as their flight dissipates the reasonable suspicion of the crime that initially gave rise to the stop. Rather, we hold that police may pursue a suspect who flees an ongoing, lawful level three stop.[FN2] Unlike flight from a level one encounter based on an "objective credible reason," which allows police to approach to request information, or a level two encounter "founded suspicion" of criminality which gives police a common-law right of inquiry, a level three stop permits "a forcible stop and detention" for questioning and a frisk for weapons if the officer "reasonably suspects that [they are] in danger of physical injury by virtue of the detainee being armed" (De Bour, 40 NY2d at 223; see CPL 140.50 [1], [3]). A suspect's flight in response to an attempted stop based on reasonable suspicion therefore interferes with officers' legal authority to temporarily detain them. Thus, unlike a level one or two encounter, an individual's "right to be let alone and refuse to respond to police inquiry" cannot justify flight from a lawful level three stop (Holmes, 81 NY2d at 1058 [internal quotation marks omitted]; see Martinez, 80 NY2d at 448). There is therefore support in the record for the finding that the police had reasonable suspicion to pursue defendant, and the lower courts properly denied suppression of the drugs (see Martinez, 80 NY2d at 448-449).
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed. Opinion by Judge Singas. Chief Judge Wilson and Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur.
Decided April 15, 2025

Footnotes

Footnote 1: Notably, article I, section 12 of the State Constitution is more protective than the Fourth Amendment of the United States Constitution in generally requiring reasonable suspicion to justify police pursuit (compare Martinez, 80 NY2d at 446, with California v Hodari D., 499 US 621, 626-629 [1991] [mere pursuit "is no seizure"]; see also People v Bora, 83 NY2d 531, 534 [1994] ["when construing our State provision, we have not required that an individual be physical restrained or submit to a show of authority before finding a seizure"]; De Bour, 40 NY2d at 216).

Footnote 2: Because the officers' initial observations provide record support for the determination that their stop and pursuit were justified, we need not consider whether defendant's actions after he stopped approaching the woman would independently support a finding of reasonable suspicion.